# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO RODRIGUEZ, | Civil Action No. 1:13-CV-2083 |
| Plaintiff, | |
| v. | (Judge William W. Caldwell) |
| NATIONAL FREIGHT, INC., MICHAEL CRUM, DALLAS FOARD, KAROL KEMPKE, BIMBO BAKERIES USA, JUSTIN FAILOR, AND TODD PUTT, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants NFI Interactive Logistics LLC (improperly pled as National Freight, Inc.) ("NFI"), Michael Crum, Dallas Foard, Karol Kempke, Bimbo Bakeries USA, Inc. (improperly pled as Bimbo Bakeries USA) ("BBU"), Justin Failor and Todd Putt (collectively "Defendants") submit this Memorandum of Law in support of their motion for a Temporary Restraining Order and an Order for a Preliminary Injunction (1) enjoining plaintiff Orlando Rodriguez from communicating in any manner, whether by telephone, written correspondence or electronically, with any of NFI's or BBU's current, prospective or former customers regarding any of the issues, facts, or subject matters set forth in the

Complaint filed by Plaintiff on August 5, 2013, or any other issues, facts, or subject matters relevant to the instant litigation; and (2) directing Plaintiff to submit to Defendants and this Court a list of all customers of NFI and BBU that Plaintiff has communicated with since the termination of his employment from NFI, including the contents and dates of each respective communication, and to attach copies of all such communications in whatever form they were sent.

## I. INTRODUCTION

On or about January 15, 2014, Plaintiff sent a series of bizarre and threatening letters to Defendants' counsel. Among the allegations contained in Plaintiff's letters (portions of which are unintelligible) are that Defendants engaged in unspecified "criminal" and "illegal" behavior. One of Plaintiff's letters goes as far as to attach a "sample letter" to Wal-Mart, one of NFI's most valued customers, accusing Defendants of certain "[c]riminal, [i]llegal and [i]mmoral [b]ehavior." Plaintiff's letter states that he is preparing to send such "letter[s] to the Clients and Customers of Defendant(s), to the Federal Government and State and Local Governments entities [sic] that do or have business with your clients." Recently, Plaintiff reiterated his threat.

Plaintiff's actions are *per se* defamatory and constitute an abuse of the legal process. They further pose a serious and irreparable threat to Defendants' critical business relationships. The immediate action of this Court is necessary to prevent

further damage to Defendants. By way of the instant application, Defendants seek to enjoin Plaintiff from further harming Defendants' legitimate business relationships through his unlawful actions.

## II.   FACTUAL BACKGROUND[1]

On August 5, 2013, Plaintiff filed a ten-count Complaint against Defendants primarily predicated on alleged acts of employment discrimination and retaliation by Defendants. (DKT #1.) Plaintiff's Complaint, which is largely unintelligible, is replete with uncognizable legal theories.[2] On or about November 4, 2013, Defendants filed an Answer and Separate Defenses to Plaintiff's Complaint. (DKT #8.)

On or about January 18, 2014, Defendants' counsel received a group of threatening letters from Plaintiff. (Bernstein Cert., ¶2.) For example, by letter dated December 7, 2013, but postmarked January 15, 2014, Plaintiff declared his intention to send "letter[s] to the Clients and Customers of Defendant(s), to the Federal Government and State and Local Governments entities [sic] that do or have business with your clients." (Bernstein Cert., Ex. A.) Plantiff's stated purpose for sending these letters is "to denounce [Defendants'] practices." (Id.)

---

[1] The Facts are taken from the February 11, 2014, Certification of Robert H. Bernstein, Esq. ("Bernstein Cert."), submitted herewith.

[2] This Court has already dismissed two of Plaintiff's unintelligible claims *sua sponte*.

3

Indeed, Plaintiff's letter attached a "sample letter" addressed to Walmart, one of NFI's valued customers. (Bernstein Cert., Ex. B.) Plaintiff's "sample letter" accused NFI and BBU of "[d]iscriminatory and abusive practices" that were "[i]llegal, [i]mmoral, or both." (Id.) Plaintiff asserted in his "sample letter" that the possibility of a jury finding that Defendants engaged in "[c]riminal, [i]llegal and [i]mmoral [b]ehavior" was "very likely." (Id.)

Plaintiff's "sample letter" further affirmed his expectation that recipients of the letter (Wal-Mart) would side with him and "the Military Service Members of this Great Country and tell [Defendants] that what they do, how they behave is not acceptable." (Id.) Plaintiff further threatened that he would regularly monitor and would otherwise "be observing [Wal-Mart's] acts upon the conclusion of this trial." (Id.)

NFI and BBU genuinely perceive Plaintiff's letters — and their stated intent — to be defamatory, unfounded, and a highly serious threat to their business relationships. (Bernstein Cert., ¶5.) Plaintiff's threatening behavior led Defendants to file a Counterclaim against Plaintiff alleging causes of action for defamation, tortious interference with business relationships, and wrongful use of civil proceedings/abuse of process. (DKT #16.)

Remarkably, Plaintiff readily acknowledges in one of his letters that he is exploiting the litigation process as a means to harass and intimidate Defendants

4

and, most disturbingly, their customers. (Bernstein Cert., Ex. C.) Plaintiff claims: "My real objective is taking place now. You will charge Defendants 1-2 hours just to read and respond each [sic] motion or communication, and even if you do nothing, you will discuss it with Defendants." (Id.)

Equally troubling, Plaintiff added his desire to pursue this case as a warped form of revenge: "Winning or not, I will have my justice . . . . One way or the other, the Cost of their defense for their Illegal Actions will bring me some sense of closure, and much deserved satisfaction." Plaintiff further stated: "I am not in any urgency or critical need and . . . will most likely wait until a level of costs for Defendants reach what I believe is Justice, or see a serious desire on Defendants to Seattle [sic]." (Id.)

Plaintiff has declared his intention to apply to law school, noting that "[f]or Defendants each act or motion is an additional 1-5 hours of costs—For me it is just training . . . and all this is not only my pursuit of Justice but the best training available." (Id.) Plaintiff further warned Defendants' counsel not to "underestimate" him, stating "I am a Soldier and Fighting is all that I know." (Id.)

Plaintiff's conduct is deeply disturbing. Plaintiff is clearly attempting to intimidate Defendants and extort a settlement by, among other things, threatening to irreparably injure their business relationships. Such an abuse of the legal process should not be permitted by this Court. Indeed, since the filing of

5

Plaintiff's Complaint, Plaintiff has flooded counsel with a wide array of bizarre, threatening, and largely unintelligible correspondence and "motions" from Plaintiff. (Bernstein Cert., Ex. D.) To Defendants' knowledge, none of these "motions" have been filed with the Court. (Bernstein Cert., ¶10.)

Plaintiff's threatening behavior continues. For example, by way of e-mail dated February 5, 2014, Plaintiff reiterated his ill-conceived intention to send outright false and defamatory letters to Defendants' customers. (Bernstein Cert., Ex. E.) It is unclear if Plaintiff has already sent such communications to Defendants' customers. However, it remains apparent that, at the very least, irreparable harm to Defendants' business relationships is imminent. Defendants do not have any reasonable means to determine whether Plaintiff has sent any such letters and, once sent, the damage is done.

Accordingly, Defendants are forced to seek the immediate assistance of this Court to stop Plaintiff's unlawful, abusive and threatening litigation tactics and prevent irreparable damage to Defendants' legitimate business relationships. It is for this reason that Defendants request the immediate entry of temporary restraints, along with an accelerated hearing schedule.

## III. ARGUMENT

A party seeking a temporary restraining order or a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm if

the injunction is not granted; (3) greater harm to the moving party in granting the injunction than harm to the opposing party in denying it; and (4) the public interest favors the granting of the injunction. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). As explained below, Defendants satisfy each of these requirements.

### A. Defendants Will Ultimately Prevail On The Merits Of Their Counterclaims

#### 1. Defendants Will Prevail On Their Counterclaim For Defamation.

"Although replete with First Amendment implications, a defamation suit fundamentally is a state cause of action." *Jenkins v. KYW*, 829 F.2d 403, 405 (3d Cir. 1987) (citations omitted). "In Pennsylvania, the Uniform Single Publication Act, *42 [Pa. Cons.Stat.] §§ 8341–8345*, sets forth the elements of a *prima facie* case in a defamation action." *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 903 (2007). To make out a claim for defamation, a party has the burden of proving:

> (1) [t]he defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

*42 Pa.C.S. § 8343(a).*

"[A] statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir. 1985) (quotation marks, citations omitted). Defamation *per se* is implicated by "words imputing: (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *See Cornell Cos., Inc. v. Borough of New Morgan*, 512 F.Supp.2d 238, 271 (E.D.Pa. 2007). More specifically, "[a] statement is defamatory *per se* as an accusation of business misconduct if it 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'" *See Clemente v. Espinosa*, 749 F.Supp. 672, 677–78 (E.D.Pa. 1990)).

Here, Plaintiff's letters are deliberately designed to defame Defendants and irreparably injure their business relationships. (See Bernstein Cert., Exs. A, B, and C.) Plaintiff admits as much in his various letters to Defendants' counsel. (Id.) In fact, Plaintiff's unfounded allegations of criminal and business misconduct by Defendants are sufficiently egregious to rise to the level of defamation *per se*. *See Cornell Cos., Inc.*, 512 F.Supp.2d at 271.

Plaintiff has no justification for such unlawful misconduct and must be enjoined from further harming Defendants' legitimate business relationships

8

through widespread dissemination of defamatory statements. Accordingly, Defendants' application should be immediately entered.

### 2. Defendants Will Prevail On Their Tortious Interference Counterclaim.

In order to state a claim for tortious interference with a business relationship, a party must allege: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (citing *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)).

NFI and BBU maintain a variety of contractual relationships and like business relationships wherein they agree to provide goods and services to their customers. By his own admission, Plaintiff has or intends to interfere with Defendants' current and prospective business relationships by communicating misleading, defamatory information to Defendants' customers. (See Bernstein Cert., Exs. A-E.) Plaintiff has no justification or privilege for his actions. Accordingly, Plaintiff must be enjoined from further unlawful action intended to interfere with Defendants' legitimate contractual relationships.

9

### 3. Defendants Will Prevail On Their Counterclaim For Abuse Of Process.

The elements of an abuse of process claim in Pennsylvania are that the plaintiff "(1) used a legal process against the [defendant], (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the [defendant]." *Reis v. Barley, Snyder, Senft & Cohen, LLC*, 426 Fed. Appx. 79, 83 (3d Cir. 2011) (citing *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 627 A.2d 190, 192 (1993)). Abuse of process is "concerned with a perversion of a process *after* it is issued," while the related cause of action for "[m]alicious use of civil process has to do with the wrongful *initiation* of such process." *Id.* (citing *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1023 (1987)) (emphasis added).

Here, Defendants have asserted counterclaims for abuse of process and wrongful use of a civil proceeding. In light of the fact that Plaintiff has (i) admitted that he instituted this suit to cost Defendants legal fees and (ii) used this litigation as a means of defaming Defendants, it cannot be seriously disputed that Defendants are likely to succeed on their claims for abuse of process and wrongful use of civil proceedings. (See Bernstein Cert., Exs. A-E.) Accordingly, this application is entirely proper.

## B. Defendants Will Suffer Irreparable Harm If The Injunction Is Denied

Defendants will suffer irreparable harm in the absence of injunctive relief. Irreparable harm is an injury that "cannot be redressed by a legal or equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight*, 882 F.2d 797, 801 (3d Cir. 1989). A court in equity may not refuse to exercise jurisdiction unless there exists an adequate remedy at law. None exists here.

By virtue of Plaintiff's unlawful conduct described above, Plaintiff has threatened the loss of Defendants' hard-earned and legitimate business relationships. While it is unclear if Plaintiff has already sent defamatory letters to Defendants' customers, it remains apparent that such unlawful action is imminent. Defendants are not required to wait until they are irreparably harmed to seek injunctive relief. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994) (standard for injunctive relief is a "clear showing of immediate irreparable injury, or a presently existing actual threat" that is not merely remote or a possibility) (citations omitted).

It is extremely difficult to quantify the future economic losses that Defendants will suffer from the possible loss of their customers. In addition, Defendants cannot quantify the loss of customer confidence that has or will occur absent an injunction. Defendants have a legitimate interest in protecting their

reputation and goodwill, as well as the relationships they have forged with their customers. Indeed, Defendants' customers are their most important assets; they are company's lifeblood. Plaintiff's threatened dissemination of false and defamatory communications immediately and irreparably endangers these assets. As a result, Defendants have been and will be irreparably harmed if Plaintiff is not enjoined from further unlawful actions.

### C. The Balance Of Equities Favors Defendants

To permit Plaintiff to spread false and defamatory correspondence to Defendants' customers will cause great harm to Defendants. On the other hand, entry of an injunction will not prevent Plaintiff from any legitimate course of conduct, such as earning a living or even prosecuting this baseless action. This application is simply intended to protect Defendants' legitimate business relationships from Plaintiff's unlawful behavior and bizarre conduct. The equities therefore weigh heavily in favor of granting this motion and enjoining Plaintiff from further harming Defendants until this matter is concluded.

### D. The Public Interest Will Best Be Served by Protecting Defendants

The public interest will not be harmed by entry of an injunction in Defendants' favor. Indeed, it is in the public interest to protect legitimate businesses from baseless litigation and defamatory and abusive accusations. Defendants have invested a considerable amount of time and money to develop

their customer relationships. It does not serve the public interest to permit an ex-employee to cavalierly destroy these relationships, let alone do so to further self-serving and impermissible motives. Accordingly, Defendants' application for temporary restraints and preliminary injunctive relief should be granted by this Court.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant their motion and enter first a temporary restraining order, and then following a hearing, a preliminary injunction providing for the following relief:

1. Enjoining Plaintiff from communicating in any manner, directly or indirectly, whether by telephone, written correspondence or electronically, with any of NFI's or BBU's current, prospective or former customers regarding any of the issues, facts, or subject matters set forth in the Complaint filed by Plaintiff on August 5, 2013, or any other issues, facts, or subject matters relevant to the instant litigation; and

2. Directing Plaintiff to submit to Defendants and this Court, within 24 hours of entry of this Order, a certified list of all customers of NFI and BBU that Plaintiff has communicated with since his termination of employment from NFI. The

certified list shall also identify (i) each individual with whom Plaintiff communicated; (ii) the contents of each communication; and (iii) the dates of each communication. Plaintiff shall further attach to the list a legible copy of each communication in whatever form it was originally sent.

|  |  |
|---|---|
| | GREENBERG TRAURIG, LLP |
| Dated: February 12, 2014 | /s/ Charles L. Rombeau |
| | Charles L. Rombeau (PA 204859) |
| | 2700 Two Commerce Square |
| | 2001 Market Street |
| | Philadelphia, PA 19103 |
| | Tel: (215) 988-7800 |
| | Fax: (215) 988-7801 |
| | rombeauc@gtlaw.com |
| | |
| | Robert H. Bernstein* |
| | GREENBERG TRAURIG LLP |
| | 200 Park Avenue |
| | P.O. Box 677 |
| | Florham Park, New Jersey 07932 |
| | Tel: (973) 360-7946 |
| | Fax: (973) 295-1362 |
| | bernsteinrob@gtlaw.com |
| | *Admitted pro hac vice |
| | |
| | **Attorneys for Defendants** |

## CERTIFICATE OF SERVICE

I, Zachary N. Klein, hereby certify that on February 12, 2014, I caused to be served a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Temporary Restraining Order and Preliminary Injunction on the following unrepresented party via overnight delivery:

> Orlando Rodriguez
> 482 Waltham Lane
> Sugar Hill, GA 30518

_____
Zachary N. Klein