UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO RODRIGUEZ,    :<br>    Plaintiff            :<br>                          :<br>vs.                       :   CIVIL NO. 1:13-CV-2083<br>                          :<br>                          :<br>NATIONAL FREIGHT, INC., *et al.*,  :<br>    Defendants        :<br>                          :<br>                          : | |

*M E M O R A N D U M*

*I.     Introduction*

This matter is before the court on Defendants' motion for preliminary injunction (Doc. 17), which Plaintiff opposes. For the reasons the follow, the court will grant the motion and preliminarily enjoin Plaintiff from contacting Defendants' customers regarding the facts and issues underlying this litigation.

*II.    Background*

Plaintiff Orlando Rodriguez, proceeding *pro se*, initiated this employment discrimination action against his former employer and various other defendants by filing a ten count complaint (Doc. 1) and motion to proceed *in forma pauperis* (Doc. 2) on August 5, 2013.[1] By order dated August 27, 2013 (Doc. 5), the court granted Plaintiff's motion and conducted an initial review of his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1] Plaintiff's complaint names National Freight, Inc., Michael Crum, Dallas Foard, Karol Kempke, Bimbo Bakeries USA, Inc., Justin Failor, and Todd Putt as defendants. Defendants note that NFI Interactive Logistics LLC and Bimbo Bakeries USA, Inc. are the appropriate names of the business entities listed in the complaint.

As a result of this review, the court dismissed two of Plaintiff's counts with prejudice and directed the United States Marshal to serve Defendants.

Defendants filed an answer (Doc. 8) on November 4, 2013, denying all allegations of misconduct. On January 31, 2014, Defendants filed an amended answer (Doc. 16) to add counterclaims arising under Pennsylvania law for defamation, tortious interference with business relationships, and wrongful use of civil proceedings/abuse of process. Defendants note that these counterclaims were prompted by correspondence received by counsel for Defendants, in which Plaintiff indicated his intention to contact Defendants' customers "to denounce [Defendants'] practices." (Doc. 18 at 3). Defendants contend that this correspondence included a "sample letter" from Plaintiff to one of Defendants' customers, accusing Defendants of "[d]iscriminatory and abusive practices" that were "[i]llegal, [i]mmoral, or both." (*Id.* at 4). Defendants assert that Plaintiff's proposed correspondence, and its stated intent, is defamatory, unfounded, and a serious threat to Defendants' business relationship with its customers.[2] Such conduct, Defendants argue, also amounts to an abuse of the legal process as Plaintiff's stated

---

[2] Given the frequency of grammatical and typographic errors in Plaintiff's filings with this court and the correspondence identified by Defendants, the court notes that it is often difficult to discern the precise meaning of Plaintiff's writings. The court also notes, however, that Defendants' characterization of the content of Plaintiff's correspondence and "sample letter" is a fair one.

2

goal in sending this correspondence is to needlessly increase Defendants' cost of litigation.[3]

On February 12, 2014, Defendants filed a motion (Doc. 17) requesting that the court issue a temporary restraining order and preliminary injunction to prevent Plaintiff from communicating with Defendants' customers in this harassing manner. Defendants also filed a brief (Doc. 18) in support of their motion, a certification from counsel for Defendants attesting to the facts underlying the motion, and copies of the allegedly injurious correspondence sent by Plaintiff. Defendants also filed a certificate of service indicating that the motion and its supporting documents were served on Plaintiff via overnight delivery on February 12, 2014.

Plaintiff did not file with the court a formal opposition to Defendants' motion; however, a review of Plaintiff's correspondence indicated that Plaintiff was aware that Defendants had challenged his intended communications with Defendants' customers. *See, e.g.*, (Doc. 17-1 at 23) (Plaintiff stating that "[v]ery soon the court . . . will express its

---

[3] Defendants' reply brief aptly collects Plaintiff's written statements to this effect. *See* (Doc. 28 at 4-5) ("My real objective is taking place now. You will charge Defendants 1-2 hours just to respond each [sic] motion or communication, and even if you do nothing you will discuss it with Defendants. . . . Winning or not, I will have my justice . . . . One way or the other, the Cost [sic] of their defense for their Illegal Actions [sic] will bring me some sense of closure, and much deserved satisfaction . . . . I am not in any urgency or critical need and . . . will most likely wait until a level of costs for Defendants reach what I believe is Justice [sic], or see a serious desire on Defendants to Seattle [sic]."); *see also* (Doc. 17-1 at 12) ("For Defendants each act or motion is an additional 1-5 hours of costs - For [sic] me it is just Training- [sic] I am applying to Law School [sic] next year . . . and all this is not only my pursuit of Justice [sic] but the best training available . . . . Winning or losing, I am winning; the only issue here is what the cost for your Clients will be?").

opinion on the correctness or legality of my communications with the [c]lients of [Defendants]"). As a result, we issued an order (Doc. 20) on February 18, 2014 to preserve the status quo. Specifically, we ordered that Plaintiff: (1) temporarily refrain from communication with Defendants' customers regarding the issues giving rise to this litigation; (2) file a response to Defendants' motion for injunctive relief on or before February 24, 2014; and (3) provide a list of all customers that have already been contacted, along with copies of any such correspondence. We granted Defendants until March 3, 2014 to file a reply, and deferred ruling on Defendants' request for a preliminary injunction until after the receipt of this briefing.

   Plaintiff filed his response (Doc. 21) to the motion on February 21, 2014, generally arguing that his proposed correspondence is protected free speech.[4] Plaintiff also filed a notice indicating that "[n]o contacts were made, YET, verbally or in writing with any of Defendants' clients or customers." (Doc. 22 at 1) (original emphasis). In sum, it is clear from his filings that Plaintiff: (1) does not refute Defendants' account of the facts underlying the instant motion; and (2) fully intends to contact Defendants' customers in the manner described above unless the court forbids him from so doing.

---

[4] The court notes that Plaintiff misguidedly devotes the overwhelming majority of his opposition to an attempt to substantiate his allegations of discrimination that form the basis of this action. Such arguments and supporting exhibits are not relevant or material to the court's resolution of the pending motion for preliminary injunction.

4

Defendants filed their reply (Doc. 28) on February 28, 2014, reiterating their initial arguments. The matter is now fully briefed and ripe for disposition.[5]

*III.       Legal Standard*

A motion that seeks emergency relief in the form of a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure. As the United States Court of Appeals for the Third Circuit has explained, a district court must evaluate the following four factors when considering such a motion:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*A.C.L.U. v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (citation omitted).

*IV.       Discussion*

Plaintiff advances a singular argument in opposition to Defendants' motion for preliminary injunction–that his proposed communication with Defendants' customers is protected free speech. While Plaintiff is correct that freedom of speech is implicated in these judicial proceedings, he is incorrect about the contours of the right or the scope of its protection. Plaintiff does not enjoy some absolute privilege to disseminate his

---

[5] Because the parties do not dispute the facts at issue, the court will not conduct an evidentiary hearing prior to ruling on Defendants' motion for preliminary injunction. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552-53 (6th Cir. 2007) (noting that "a hearing is only required when there are disputed factual issues") (collecting cases).

proposed extrajudicial communications, nor is he immune to Defendants' state law tort claims stemming from such communications.

"[A] person is entitled to absolute immunity for 'communications [1] which are issued in the regular course of judicial proceedings and [2] which are pertinent and material to the redress or relief sought.'" *Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67, 71 (Pa. 2004) (quoting *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (Pa. 1986)). This "judicial privilege" affords parties the opportunity to pursue their claims in court without fear of a subsequent suit for libel or defamation. *Id.* The judicial privilege is not, however, "a license for extra-judicial defamation." *Post*, 507 A.2d at 356.

Here, Plaintiff's proposed communications with Defendants' customers do not fall within the scope of this privilege. Plaintiff's desired extrajudicial communications to denounce Defendants' practices are neither part of the regular course of these proceedings, nor are they pertinent or material to redressing the harms allegedly suffered by Plaintiff. *See id.* (finding that the judicial privilege did not protect an attorney from liability for statements he made in a letter detailing alleged acts of misconduct by his opposing attorney, where the letter was mailed to opposing counsel, the presiding judge, the disciplinary board, and the attorney's client); *Bochetto*, 860 A.2d at 73 (finding that defendant's act of sending a copy of a pleading to a journalist not involved in the litigation "was an extrajudicial act that occurred outside the regular course of the judicial proceedings and was not relevant in any way to those proceedings," and concluding that "it is plain that it was not protected by the judicial privilege"). In short, Plaintiff's

participation in this litigation does not afford him a license to disparage Defendants and/or damage their business relationships with impunity.

Given that Plaintiff may be found liable for his proposed communications, we will address Defendants' request for a preliminary injunction to prevent them from being disseminated. Turning to the first factor guiding our analysis, we find that Defendants have a reasonable probability of success on the merits of their state law counterclaims (defamation, tortious interference with business relationships, and abuse of legal process) should Plaintiff send his proposed correspondence denouncing Defendants and accusing them of discriminatory, illegal, and abusive practices. Defendants have a reasonable probability of establishing that these statements are defamatory because they tend "to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 242 (E.D. Pa. 2012) (citation omitted). Since Plaintiff's communications target Defendants' customers and his stated motivation is to cause Defendants' pecuniary harm, Defendants also have a reasonable probability of success on their claim for tortious interference with contractual relationships. *See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (stating that a cause of action for tortious interference under Pennsylvania law requires: (1) the existence of a contractual relationship between the complainant and a third party; (2) purposeful action by the defendant to harm the existing relationship; (3) absence of justification on the part of

defendant; and (4) occasioning of actual legal damages). Similarly, in light of Plaintiff's stated desire to needlessly increase Defendants' cost of suit by sending his proposed correspondence, Defendants are reasonably likely to prevail on their abuse of process claim. *See Reis v. Barley, Snyder, Senft & Cohen, LLC*, 426 F. App'x 79, 83 (3d Cir. 2011) (stating that the elements of an abuse of process claim in Pennsylvania are that the defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff) (citation omitted).[6]

        Considering the second factor, we conclude that Defendants would likely suffer irreparable injury if Plaintiff is not enjoined from contacting Defendants' customers to denounce Defendants' "illegal" and "immoral" practices. The potential for damage to Defendants' reputation and good will is readily apparent, and such injury can qualify as irreparable harm. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.") (internal quotation marks omitted).

---

[6] Regardless of the potential for success on the merits of Defendants' defamation and tortious interference claims, the court need not countenance Plaintiff's clear abuse of the legal process to intentionally and needlessly increase the costs of litigating this case. *See Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990) ("When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process.").

Turning to the third factor, we conclude that enjoining Plaintiff will cause less harm to Plaintiff than Defendants would likely face should injunctive relief be denied. While this court does not take lightly the imposition of any restriction on speech, no matter how slight, enjoining Plaintiff from contacting Defendants' customers will not impair Plaintiff's ability to effectively litigate his case or obtain the relief he seeks. Because his proposed communications are not intended for a proper purpose, prohibiting such communications will not significantly harm Plaintiff.[7]

Considering the final factor, we conclude that the public interest favors the issuance of an injunction in this case. The public, as well as the court and the parties, benefit from the fair, speedy, and inexpensive resolution of legal disputes. Permitting Plaintiff's proposed correspondence in this matter will impede these goals, improperly increase Defendants' cost of defense, and potentially cause irreparable harm to Defendants' business interest. While the public also benefits from free and unfettered discourse, the minimal restriction on Plaintiff's proposed speech is justified by the circumstances of this case.

---

[7] Plaintiff will not suffer pecuniary harm from an injunction restricting his ability to contact Defendants' customers. As a result, we will not require Defendants to provide security pursuant to Fed. R. Civ. P. 65(c). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (noting Rule 65(c)'s general requirement that a moving party provide security in an amount to pay costs and damages of any party wrongfully enjoined, and the exception to this rule "when complying with the preliminary injunction raises no risk of monetary loss to the [enjoined party]") (citation omitted).

Accordingly, we find that all four factors favor the issuance of a preliminary injunction to prevent Plaintiff's proposed communication with Defendants' customers.

*V.*         *Conclusion*

For the foregoing reasons, we will grant Defendants' motion for preliminary injunction (Doc. 17) and restrain Plaintiff from communicating with Defendants' customers regarding the issues and facts giving rise to this litigation. We will issue an appropriate order.

<pre>                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge</pre>

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO RODRIGUEZ, | : |
|     Plaintiff | : |
| | : |
| vs. | :   CIVIL NO. 1:13-CV-2083 |
| | : |
| NATIONAL FREIGHT, INC., *et al.*, | : |
|     Defendants | : |

*O R D E R*

AND NOW, this 13th day of March, 2014, for the reasons discussed in the accompanying memorandum, Defendants' motion for preliminary injunction (Doc. 17) is GRANTED. Accordingly, Plaintiff is preliminarily enjoined from communicating regarding the issues and facts giving rise to this litigation with any individual or entity Plaintiff knows to be a current, former, or prospective customer of Defendants. This prohibition shall remain in effect until further order of court.

                                                /s/William W. Caldwell
                                                William W. Caldwell
                                                United States District Judge